UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| LISA A. WORKS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-50-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of a motion for judgment on the pleadings filed by Plaintiff Lisa Works [Record No. 10] and a motion for summary judgment filed by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") [Record No. 11]. Works argues that the administrative law judge ("ALJ") erred in finding that she is not disabled. She seeks to have this matter remanded for further proceedings. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Works.

**I.**

Works filed an application for Supplemental Security Income ("SSI") on April 26, 2002. She alleged disability beginning on December 31, 1996. [Tr., p. 60] Works' claim was denied initially and upon reconsideration. [Tr., p. 50, 56] Thereafter, an administrative hearing was held

before ALJ Roger L. Reynolds in Frankfort, Kentucky, on June 4, 2007. Works was present at the hearing along with her attorney, Shane Ludeke, and a vocational expert ("VE"), Betty Hale. [Tr., p. 609] In a decision dated June 19, 2007, ALJ Reynolds found that Works was not disabled under section 1614(a)(3)(A) of the Social Security Act and, therefore, was not entitled to SSI. [Tr., p. 28]

Works was thirty-six years old at the time of the administrative hearing. [Tr., p. 612] She has a ninth-grade education. [Tr., p. 613] Works has employment experience as a cashier, housekeeper at an apartment complex, and dish washer at a restaurant. [Tr, p. 613-14] Works alleges disability due to back and leg pain. [Tr., p. 621] After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Works suffers from the severe impairments of chronic low back pain status post L5-S1 discectomy and obesity. [Tr., p. 23] However, notwithstanding these impairments, ALJ Reynolds found that Works retained the residual functional capacity ("RFC"):

> to perform a full range of sedentary work. Sedentary work is defined in 20 C.F.R. 404.1567(a) as work that involves lifting no more than 10 pounds at a time and occasional lifting or carrying. A sedentary job usually involves mostly sitting, but may involve a certain amount of walking and standing, usually 2 hours out of 8 hours.

[Tr., p. 25] As a result of this assessment, Works was denied SSI. [Tr., p. 28]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th

Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has

the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

**A.** **Consideration of the Medical Evidence**

Works maintains that the ALJ improperly rejected the assessment of her treating physician, Dr. Rodney Chou, that she is disabled. She also suggests that ALJ Reynolds should not have disregarded the opinion of Dr. William Earl Barrett, who examined her at the Administration's request. Finally, Works contends that the RFC assessments completed by the non-examining state agency physicians do not constitute substantial evidence supporting the ALJ's decision. None of these arguments is availing.

### 1. Rejection of Dr. Chou's Assessment of Disability

Works first argues that the ALJ did not give good reasons for rejecting Dr. Chou's opinion that she is totally disabled. [Record No. 10-2, p. 14] She asserts that ALJ Reynolds did not adequately explain his finding that Dr. Chou's conclusion was inconsistent with the objective medical evidence of record. [*Id.*] In addition, Works contends that the ALJ erred in failing to discuss the factors set forth in 20 C.F.R. § 416.927(d) for weighing medical opinions. [*Id.*]

In support of her argument, Works relies on this Court's decision in *Bowlin v. Astrue*, No. 6: 09-02-DCR, 2009 U.S. Dist. LEXIS 68047 (E.D. Ky. Aug. 5, 2009). In *Bowlin*, the Court explained the standard for weighing the opinion of a treating source:

> A treating source's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the claimant's record.
>
> However, a treating source's opinions should not be completely rejected even if they are not entitled to controlling weight. Rather, the ALJ must determine what weight to give the opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion.

> In addition, the regulations impose a clear and explicit elaboration requirement stating that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

*Id.* at *8-9 (citations omitted). The Court then quoted Social Security Ruling 96-2p, which provides that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996). The Sixth Circuit has held, however, that "[c]onclusory statements from physicians are properly discounted by ALJs." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). Moreover, the regulations provide that a physician's opinion as to whether a claimant is disabled will be given no "special significance." 20 C.F.R. § 927(e)(3).

Here, ALJ Reynolds stated that he "considered but reject[ed]" Dr. Chou's February 8, 2007 assessment of Works' disability. [Tr., p. 27] The ALJ explained that, "[n]ot only is disability a finding of fact reserved to the Commissioner of Social Security, but it is inconsistent with the objective medical evidence of record as delineated above." [*Id.*] While this explanation is brief, so is the "opinion" it addresses, which consists of the following note jotted on a prescription pad: "Pt. is totally disabled & has been unable to perform any type of work for >1 year." [Tr., p. 445] This case is thus easily distinguished from *Bowlin*, in which the treating physician had completed a detailed assessment of the claimant's physical limitations.[1] *See* 2009

---

1    Likewise, the *Barnhill* case, cited by Works for the proposition that the good reasons requirement applies equally to opinions on issues reserved to the Commissioner [*see* Record No. 10-2, p. 15], involved

U.S. Dist. LEXIS 68047 at *6-8. There, the ALJ found that the restrictions described by Bowlin's treating physician were "out of proportion with the remaining objective medical evidence in the record and there [was] nothing in the treatment record that would support such limitations." *Id.* at *11. Because the ALJ did not specify which aspects of the treating source's opinion he found objectionable, nor did he explain how those parts of the opinion were unsupported by or inconsistent with the evidence of record, the Court concluded that the ALJ's decision did not satisfy the "good reasons" requirement. *Id.*

In the present case, ALJ Reynolds adequately explained his reasons for discounting Dr. Chou's assessment of disability, observing that the assessment was "inconsistent with the objective medical evidence of record *as delineated above*." [Tr., p. 27 (emphasis added)] In other words, the ALJ incorporated his entire previous discussion of the medical evidence, which contained ample support for a finding of no disability.[2] He was not bound by Dr. Chou's bare conclusion that Works is disabled. *See White*, 572 F.3d at 286.

Furthermore, the fact that the ALJ did not recite the factors set forth in § 416.927(d) does not mean that he failed to consider them. ALJ Reynolds stated in his decision that he had "considered opinion evidence in accordance with the requirements of 20 CFR 416.927." [Tr., p. 25] His discounting of Dr. Chou's disability assessment based on one of the factors in § 416.927(d) — namely, consistency with the record — indicates that he did in fact apply them.

---

an ALJ's rejection of a detailed "Medical Assessment of Ability to Do Work-Related Activities" form. *Barnhill v. Astrue*, No. 6: 08-248-DCR, 2009 U.S. Dist. LEXIS 29377, at *10 (E.D. Ky. Mar. 31, 2009).

2      For example, an MRI performed in August 2002 showed no disc herniation. [Tr., p. 455] In addition, during a June 30, 2006 visit to Carroll County Hospital, Works "denied significant pain"; she complained merely of a constant "low grade ache" in her back. [Tr., p. 24] She reported that she was taking no medications for pain at that time. [*Id.*; Tr., p. 459]

In any event, all the regulations require is that the ALJ's decision provide "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(d)(2). As explained above, that standard is met here.

Finally, it is important to note that ALJ Reynolds did not reject Dr. Chou's opinion entirely, but merely his conclusory assessment of disability. In a letter to Works' counsel dated June 1, 2007, Dr. Chou opined that Works would be limited to three hours per day of sitting and three hours per day of standing and walking. [Tr., p. 604] He further stated that she could lift or carry no more than ten pounds. [*Id.*] Thus, as noted by the Commissioner, the sole distinction between Dr. Chou's assessment of Works' abilities and the ALJ's RFC determination is the length of time she can sit each day. [*See* Record No. 11, p. 6; Tr., p. 25, 604] Because Works does not challenge the ALJ's treatment of Dr. Chou's June 2007 opinion, however, the Court need not address this issue. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (court is not obligated to develop arguments for a claimant or engage in a fishing expedition for evidence to support the claimant's position).

### 2. Rejection of Dr. Barrett's Opinion

Works next suggests that the ALJ improperly rejected the opinion of Dr. Barrett, who performed a consultative examination of Works in August 2002. [Record No. 10-2, p. 15] Dr. Barrett found "physical evidence based on examination and the patient's report for a severe restriction in patient's tolerance for stooping, bending, reaching, standing, moving about, lifting, carrying, handling objects or ability to travel." [Tr., p. 424] Presumably, this is the portion of Dr. Barrett's opinion that Works believes the ALJ should have credited. Notably, however, Dr.

Barrett found no restriction for sitting. [*Id.*] Thus, his opinion, had it been accepted, would have bolstered the ALJ's finding that Works is capable of performing sedentary work. Moreover, the Court notes that Works herself stated in December 2002 that her "days [were] spent mostly in [her] recliner," which likewise suggests that her ability to sit for extended periods is not significantly limited. [Tr., p. 183] In short, Dr. Barrett's opinion would not have been entirely helpful to Works, as it supports the ALJ's assessment of her RFC in at least one important respect.

In any event, Works does not attempt to explain why she believes Dr. Barrett's report should have been credited, but instead cites two minimally relevant facts cherry-picked from the record in an attempt to rebut the ALJ's findings.[3] [*Id.*] The Court is not obligated "to formulate arguments on [Works'] behalf," *Hollon*, 447 F.3d at 491, or scrutinize the record in search of evidence to support her claim. *See id.* Works' intimation that the ALJ somehow erred in disregarding Dr. Barrett's opinion thus does not warrant further discussion.

### 3. Weight Given to Opinions of Non-Examining Physicians

Finally, Works asserts that the opinions of the non-examining state agency physicians cannot serve as substantial evidence supporting the ALJ's decision. [Record No. 10-2, p. 16] ALJ Reynolds did not rely exclusively on the agency physicians' assessments. Instead, he simply noted that those assessments provided additional support for his finding of no disability. [Tr., p. 27] Furthermore, the RFC he assigned is actually more favorable to Works than those

---

3  Works incorrectly asserts that ALJ Reynolds "failed to note that in June 2006 although [she] denied 'significant' pain she did report a constant ache that continued to bother her." [Record No. 10-2, p. 15] The ALJ actually noted this fact not once but twice in his decision. [*See* Tr., p. 24, 26]

of the agency physicians: whereas the agency physicians found that Works has the capacity to perform light work, ALJ Reynolds "g[ave] the claimant the benefit of the doubt" and concluded that she is limited to sedentary work. [*Id.*] The ALJ's decision thus does not indicate that he gave undue weight to the non-examining sources' opinions.

In any event, Works' challenges to these opinions are unpersuasive. According to Works, the first opinion, by Dr. Kenneth Phillips, was based solely on the report of Dr. Barrett. [*Id.*] However, the RFC assessment form completed by Dr. Phillips instructs that conclusions should be based "on **all evidence** in file (clinical and laboratory findings; symptoms; observations, lay evidence; reports of daily activities; etc.)." [Tr., p. 128] Dr. Phillips' written RFC assessment notes his "[r]eview of the records" [Tr., p. 436] and refers to facts not contained in Dr. Barrett's report.[4] [Tr., p. 436-37] Finally, Dr. Phillips "considered but [did] not totally adopt[]" Dr. Barrett's opinion because he found a lack of medical evidence to support some of the conclusions contained therein. [Tr., p. 437] In short, there is no reason to believe that Dr. Phillips "reviewed only the report of Dr. Barrett," as Works contends. [Record No. 10-2, p. 16]

Works next attacks the qualifications of the second agency physician, Dr. J.E. Baez-Garcia, who reviewed the record. [*Id.*] She observes that "Dr. Baez-Garcia is a non-board certified pulmonologist" and asserts, "Therefore, his assessment of [her] orthopedic impairments is questionable, at best." [*Id.*] While an agency physician's area of specialty is a relevant consideration when weighing medical opinions, it is only one of a number of factors set forth in

---

4  For example, Dr. Phillips stated the location of Works' disc injury [Tr., p. 436] and also noted that Works "report[ed] that she has been advised by her doctor to do no more sweeping or mopping" [Tr., p. 437], information that was not included by Dr. Barrett. [*See* Tr., p. 422-24]

the regulations. *See* 20 C.F.R. § 416.927(f)(2)(ii). Moreover, agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i). Nevertheless, as noted above, the ALJ's decision makes clear that he did not give excessive weight to the non-examining sources' RFC assessments. Works does not establish that those opinions should have been discounted even further in her favor.

**B.     Evaluation of Works' Credibility**

Works also asserts that the ALJ erred in his evaluation of her credibility. ALJ Reynolds found that Works' testimony "was credible regarding the general nature of her impairments that were established by the medical evidence of record." [Tr., p. 26] However, he concluded that Works "was not credible in her assertion that her combined impairments preclude her from all full-time work activities, or activities with greater limitations than set forth in the residual functional capacity." [*Id.*] An ALJ's credibility determination is entitled to "great weight and deference." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). A reviewing court may only "evaluat[e] whether or not the ALJ's explanations for partially discrediting [the claimant] are reasonable and supported by substantial evidence in the record." *Id.* This standard is clearly met here.

The regulations set forth seven factors to be considered when assessing a claimant's credibility:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the] pain or other symptoms;

| | |
|---|---|
| (v) | Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the] pain or other symptoms; |
| (vi) | Any measures [the claimant] use[s] or ha[s] used to relieve [the] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
| (vii) | Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms. |

20 C.F.R. § 416.929(c)(3); *see* SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996). ALJ Reynolds recited these factors in his decision. [Tr., p. 25-26] He then summarized the evidence of record as it pertains to each factor:

> The claimant testified at the hearing that she had back surgery in 1996, which was after an automobile accident. She said the surgery did not help her at all and she now takes medications for pain. She stated her doctors mentioned more surgery but she was afraid to undergo additional surgery since the first surgery did not help her. She reported her pain is in her lower back and in the middle mostly on the left side. She described her pain as radiating down her back and into her feet. She said her pain worsens when she drives. She stated she sees a doctor every four months for evaluation of her condition and medications. She reported her activities of daily living consist of getting up in the morning, making sure the children have eaten, watching television, and sitting on the couch until she can no longer sit. She said her nose was broken recently in an altercation with a next door neighbor (female minor). The sheriff was called and advised her neighbors to not be on her property anymore. She said she has problems sitting, standing and walking. She reported an ability to lift a gallon of milk. She reported she has not been to Iowa, contrary to a report in her medical evidence of record that she had recently traveled there, since she was a little girl although her sister does live there. She said she is restricted in her ability to sweep, mop or vacuum due to her back problems. She stated she has frequent migraine headaches, which last up to two weeks and prevent her from doing anything. She said she no longer has a medical card, but when she did, it would not cover her medications. She reported her husband smokes approximately two packs of cigarettes per day. She said her energy is almost non-existent. She stated her husband does most of the cooking and her daughter wants to learn to cook. She reported she has side-effects from her medications that consist of nausea and drowsiness. She said if she is sitting straight up on the couch she can fold some laundry. She reportedly attempts to do the dishes but cannot finish them due to an inability to stand for very long. She said she does not get out much.

[Tr., p. 26] Thus, Works' contention that the ALJ only considered the first factor — *i.e.*, her daily activities — is utterly without merit. [*See* Record No. 10-2, p. 18]

ALJ Reynolds pointed to specific evidence supporting his conclusion that Works was not completely credible:

> On August 26, 2002, magnetic resonance imaging (MRI) of the lumbar spine showed no evidence of herniation. The claimant denied traveling to Iowa since she was a little girl, but on May 30, 2002, it was noted that she reported she was going to Iowa by herself to visit her sister[.] On March 25, 2004, the claimant exercised for a total of six minutes on a Bruce protocol stress test. She was noted to have fair exercise tolerance[.] On June 30, 2006, the claimant denied any significant pain "at this time." She did report a low grade ache constantly in the lumbosacral spine. She reported she was not taking any medication[.] She complains of no money for medications but her husband smokes two packs of cigarettes per day and she had a cell phone at the hearing.

[Tr., p. 26 (citations omitted)] Works challenges several aspects of the ALJ's credibility determination based on these facts.

First, she asserts that although the August 2002 MRI did not show a disc herniation, a test done six years earlier "showed posterolateral disc protrusion and right posterolateral disc herniation at L5-S1." [Record No. 10-2, p. 17 (citing Tr., p. 264)] However, the test cited by Works is of no significance whatsoever, as it was conducted shortly before surgery to repair those injuries in October 1995. [Tr., p. 264, 269] The ALJ's reliance on the more recent MRI results was therefore not improper.

Next, Works maintains that "[t]he fact that [she] planned on going to visit her sister" in Iowa is irrelevant because she testified at the hearing "that she had not been to visit her sister since she was young." [Record No. 10-2, p. 17] Whether she actually went to Iowa is beside the point, however. What is significant is that she *planned* to make the trip. The fact that she

would have contemplated traveling alone to visit a relative several states away strongly suggests that her condition is not as severe as she claims. In particular, it calls into question her alleged inability to sit for extended periods of time. Therefore, the ALJ did not err in considering it.

Works further suggests that the results of the March 25, 2004 cardiac stress test are not inconsistent with her claims of disability. [Record No. 10-2, p. 17] The test revealed that Works had "fair exercise tolerance." [Tr., p. 542] This result likewise indicates that Works' limitations are not as significant as she asserts, and it thus was relevant to the ALJ's credibility determination.

Finally, although Works does not mention the ALJ's observations regarding cigarettes and her cell phone, the Court notes that her complaint that she cannot afford her medications is undermined by her admission of her husband's two-pack-a-day habit, since, as ALJ Reynolds aptly noted, even "a pack a day [would be] $100 a month in an ashtray." [Tr., p. 636] *Cf. Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("Taking judicial notice of the monetary cost of this dangerous [two-pack-a-day] habit, we calculate that the cost of the [prescribed support] hose could have been covered by the savings the claimant would realize if he gave up cigarettes."). Likewise, a cell phone and accompanying service plan are significant nonessential expenses that indicate Works' pain is not so severe as to demand top financial priority. In summary, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

**IV.**

Although Works has established that she suffers from some medical impairments, she has not established that her symptoms are severe enough to warrant Supplemental Security Income. The ALJ did not improperly weigh the medical opinions. Nor did he err in evaluating Works' credibility. Viewing the record as a whole, substantial evidence supports ALJ Reynolds' determination that Works is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Lisa A. Works' Motion for Judgment on the Pleadings [Record No. 10] is **DENIED**.

(2) Defendant Commissioner Michael Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 1st day of November, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge